UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
TIMOTHY J. SULLIVAN
UNITED STATES MAGISTRATE JUDGE

6500 Cherrywood Lane
Greenbelt, Maryland 20770
Telephone: (301) 344-3593

August 21, 2018

LETTER TO COUNSEL:

    RE:    *Justin Beasley v. Nancy A. Berryhill, Acting Commissioner of Social Security*[1]
            Civil Case. No. TJS-17-2009

Dear Counsel:

    On July 18, 2017, Plaintiff Justin Beasley ("Mr. Beasley") petitioned this Court to review the Social Security Administration's final decision to deny his claims for disability insurance benefits ("DIB") and supplemental security income ("SSI"). (ECF No. 1.) The parties have filed cross-motions for summary judgment. (ECF Nos. 14 & 15.) These motions have been referred to the undersigned with the parties' consent pursuant to 28 U.S.C. § 636 and Local Rule 301.[2] I find that no hearing is necessary. *See* Loc. R. 105.6. This Court must uphold the decision of the agency if it is supported by substantial evidence and if the agency employed the proper legal standards. 42 U.S.C. §§ 405(g), 1383(c)(3); *Mascio v. Colvin*, 780 F.3d 632, 634 (4th Cir. 2015). Following its review, this Court may affirm, modify, or reverse the Acting Commissioner, with or without a remand. *See* 42 U.S.C. § 405(g); *Melkonyan v. Sullivan*, 501 U.S. 89 (1991). Under that standard, I will deny Mr. Beasley's motion and grant the Acting Commissioner's motion. This letter explains my rationale.

    In his applications for DIB and SSI, Mr. Beasley alleged a disability onset date of September 1, 2009. (Tr. 15.) His applications were denied initially and on reconsideration. (*Id.*) A hearing was held before an Administrative Law Judge ("ALJ") on December 8, 2015, (Tr. 29-61), and the ALJ found that Mr. Beasley was not disabled under the Social Security Act (Tr. 15-23). The Appeals Council denied Mr. Beasley's request for review (Tr. 1-4), making the ALJ's decision the final, reviewable decision of the agency.

    The ALJ evaluated Mr. Beasley's claim for benefits using the five-step sequential evaluation process set forth in 20 C.F.R. §§ 404.1520, 416.920. At step one, the ALJ found that Mr. Beasley was not engaged in substantial gainful activity, and had not been engaged in substantial gainful activity since September 1, 2009. (Tr. 17.) At step two, the ALJ found that Mr. Beasley suffered from the severe impairment of Crohn's disease. (Tr. 17-18.) The ALJ found that Mr. Beasley's mental impairment of adjustment disorder with mixed anxiety and depressed

---

[1] Currently, the position of Commissioner of the Social Security Administration is vacant, and most duties are fulfilled by Nancy A. Berryhill, Deputy Commissioner for Operations, performing the duties and functions not reserved to the Commissioner of Social Security.

[2] This case was originally assigned to Magistrate Judge Stephanie A. Gallagher. On May 31, 2018, the case was reassigned to me.

mood was non-severe. (Tr. 18.) At step three, the ALJ found that Mr. Beasley's impairments, separately and in combination, failed to meet or equal in severity any listed impairment as set forth in 20 C.F.R., Chapter III, Pt. 404, Subpart P, App. 1 ("Listings"). (Tr. 19.) The ALJ determined that Mr. Beasley retained the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(c), 416.967(c), except that he is unable to stand for more than two hours in an eight-hour workday.[3] (*Id.*)

At step four, relying on the testimony of a vocational expert, the ALJ determined that Mr. Beasley was able to perform past relevant work as a mortgage processor. (Tr. 22.) Therefore, the ALJ found that Mr. Beasley was not disabled under the Social Security Act. (Tr. 24.)

Mr. Beasley raises three arguments in this appeal: (1) the ALJ did not provide a sufficient narrative discussion in connection with the RFC assessment (ECF No. 14-1 at 6); (2) the ALJ failed to follow the "slight abnormality" standard in finding that Mr. Beasley's mental impairment was non-severe (*id.* at 8); and (3) the ALJ failed to give adequate weight to Mr. Beasley's treating physician's opinion (*id.* at 9).

Mr. Beasley first argues that the ALJ "clearly failed to satisfy her duty to include the function-by-function assessment in her decision." (ECF No. 14-1 at 7.) Mr. Beasley argues that the ALJ "failed to include any limitations related to bathroom breaks or time off task in her RFC assessment," even after concluding that Mr. Beasley had the severe impairment of Crohn's disease. (*Id.*) The Acting Commissioner argues that the ALJ made sufficient findings based on the record evidence to support the RFC and to permit judicial review. (ECF No. 15-1 at 4-8.)

Social Security Ruling 96-8p instructs that an "RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions" listed in the regulations. SSR 96-8p, 1996 WL 374184, at *1 (S.S.A. July 2, 1996). Further, the "RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Id.* at *7. An ALJ must "both identify evidence that supports his conclusion and build an accurate and logical bridge from [that] evidence to his conclusion." *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018) (emphasis omitted).

The ALJ adequately assessed Mr. Beasley's RFC based on the medical evidence. The ALJ summarized Mr. Beasley's medical records from August 2009 through November 2015

---

[3] The regulations state that "[l]ight work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. §§ 404.1567(b), 416.967(b).

related to Crohn's disease and found that the condition "is generally controlled when [he] is complaint" with the treatment recommendations of his medical providers. The ALJ concluded that Mr. Beasley's history of sporadic treatment and medical noncompliance did not warrant any greater limitation beyond a reduced range of light work. (Tr. 20.) The ALJ also considered and gave great weight to the medical opinions of the State agency medical consultants that "[Mr. Beasley] could perform a full range of light work, but could only stand and walk for two hours in an eight-hour workday." (*Id.* at 21-22.) The evidence summarized by the ALJ supports the finding that Mr. Beasley can perform light work except he is unable to stand for more than two hours in an eight hour workday. Because the ALJ's narrative RFC discussion and relevant citations to the record enable meaningful review of the RFC analysis, Mr. Beasley's first argument is without merit.

Mr. Beasley's second argument is that the ALJ failed at step two to follow the "slight abnormality" standard in finding Mr. Beasley's mental impairment of adjustment disorder with mixed anxiety and depressed mood was not severe. (ECF No. 14-1 at 8-9.) Mr. Beasley contends that for the ALJ to make the non-severe determination, "[the ALJ] had to find that it was a slight abnormality (or a combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities" which, "clearly does not fit with" Mr. Beasley's GAF score of 50 as determined by Dr. Evelyn Fielding, the State agency psychologist.[4] (ECF No. 14-1 at 9). The ALJ gave "some weight" to the opinion of the State agency psychologist "who

---

[4] The Global Assessment of Functioning ("GAF") scale is a method of considering psychological, social, and occupational function on a hypothetical continuum of mental health. *Johnson v. Astrue,* No. TMD-10-947, 2011 WL 5149574 at *2 (D. Md. Oct. 27, 2011) (citing *Diagnostic and Statistical Manual of Mental Disorders,* Fourth Ed.). A GAF score is a "subjective determination that represents the clinician's judgment of the individual's overall level of functioning" at the time of the evaluation. *White v. Comm'r of Social Sec.,* 572 F.3d 272, 276 (6th Cir. 2009); *see also Green v. Astrue*, No. 10-1840-SVH, 2011 WL 1770262 (D.S.C. May 9, 2011). The use of GAF scores has been discontinued in the DSM–V, in part because of a lack of conceptual clarity. *Clemins v. Astrue*, No. 13-0047, 2014 WL 4093424, at *26 (W.D. Va. Aug. 18, 2014) (citing American Psychiatric Association, *Diagnostic & Statistical Manual of Mental Disorders* 16 (5th ed. 2013)). In addition, as other courts have noted, "the Commissioner has declined to endorse the GAF scale for 'use in the Social Security and SSI disability programs,' and has indicated that GAF scores have no 'direct correlation to the severity requirements of the mental disorders listings.'" *Wind v. Barnhart*, 133 F. App'x 684, 692 (11th Cir. 2005) (quoting 65 Fed. Reg. 50746, 50764–65 (Aug. 21, 2000)); *see also Melgarejo v. Astrue*, No. JKS-08-3140, 2009 WL 5030706, at *2 (D. Md. Dec. 15, 2009). To the extent that they are considered, GAF scores range from 100 to 1, with lower scores indicating that the person is a danger to themselves or others, and higher scores indicating that the person has no symptoms to indicate problems in functioning:

> A GAF of 41 to 50 means that the patient has serious symptoms . . . OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job).

*Haines v. Astrue*, No. SAG-10-0822, 2012 WL 94612, at *2 (D. Md. Jan. 10, 2012) (quoting *White v. Comm'r of Social Sec.,* 572 F.3d 272, 276 (6th Cir. 2009)).

3

assessed [Mr. Beasley] with a Global Assessment of Functioning (GAF) of 50." (Tr. 22.) Mr. Beasley's sole argument is that the ALJ's assignment of "some weight" to Dr. Fielding's opinion is impossible to reconcile with the finding that he does not have a severe mental impairment. (ECF No. 14-1 at 9.) The Acting Commissioner argues that the ALJ did not err in giving "some weight" to the State agency psychologist and also finding that Mr. Beasley did not have a severe mental impairment. (ECF No. 15-1 at 8-10.)

An impairment is considered "severe" if it significantly limits the claimant's ability to work. 20 C.F.R. §§ 404.1522(a), 416.922(a); SSR 16-3p, 2017 WL 5180304 (S.S.A. Oct. 25, 2017). Conversely, if an impairment "is a slight abnormality or a combination of slight abnormalities that causes no more than minimal functional limitations," it is not considered to be severe. 20 C.F.R. § 416.924(c).

The review undertaken by the Court of the ALJ's decision is confined to whether the decision is supported by substantial evidence and whether correct legal standards were applied. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). The Court will not "re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment" for that of the ALJ. *Id.* While an ALJ must consider "all of the relevant medical and other evidence" in assessing a claimant's RFC, 20 C.F.R. §§ 404.1545, 416.945, "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision." *Reid v. Comm'r of Soc. Sec'y*, 769 F.3d 861, 865 (4th Cir. 2014) (quoting *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (per curiam)).

By giving "some weight" to the State agency psychologist's opinion, the ALJ found that Mr. Beasley had "no difficulties getting along with others, including those in authority, and his depression was . . . 'largely situational.'" (Tr. 18.) The ALJ noted that Mr. Beasley sought "only minimal mental health treatment, [and] attended only two counseling sessions in June 2015 before being discharged for failing to comply with the attendance policy." (*Id.*) The ALJ also considered the findings by the State agency psychologist that Mr. Beasley's memory was intact, that he could follow multi-step instructions, and that he had normal cognitive function. (Tr. 18, 456-457.) In addition, the ALJ cited the opinion of Dr. Nicole Mannis, a State agency psychological consultant, to support the finding that Mr. Beasley's mental impairment is not severe. (Tr. 19.) Dr. Mannis concluded that Mr. Beasley did not have a severe mental impairment. (Tr. 90.) Finally, Mr. Beasley's heavy reliance on the GAF score of 50 alone to support a severe mental impairment is not persuasive. This Court has made it clear that a GAF score itself is not determinative of a claimant's disability. *Jenkins v. Comm'r. Soc. Sec. Admin.*, No. SAG-13-1967, 2014 WL 1870845, at *3 n.1 (D. Md. May 5, 2014); *Walters v. Comm'r, Soc. Sec. Admin.*, No. SAG-13-1777, 2014 WL 1225313, at *2 (D. Md. March 24, 2014). The ALJ properly considered the evidence of record relating to Mr. Beasley's medically determinable mental impairment and the RFC assessment is supported by substantial evidence. This Court will not substitute its own judgment for that of the ALJ. For these reasons, Mr. Beasley's second argument is without merit.

In the alternative, even assuming the non-severe conclusion reached by the ALJ was erroneous and the mental impairment should have been classified as severe, this error would have been "harmless because finding a severe impairment at Step Two ensured [the ALJ] would

proceed to Step Three." *Jackson v. Berryhill*, No. 15-2994-KDW, 2017 WL 586648, at *10 (D.S.C. Feb. 14, 2017) (citing *Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008) (holding that "any error here became harmless when the ALJ reached the proper conclusion that [claimant] could not be denied benefits conclusively at step two and proceeded to the next step of the evaluation sequence")); *see also Baker v. Astrue*, No. SAG-10-1045, 2012 WL 12751, at *3 (D. Md. Jan. 3, 2012) (noting that "a failure to consider a particular impairment at Step Two may be harmless error if the impairment is fully considered at subsequent steps"). As Mr. Beasley's medical impairment of Crohn's disease was determined to be severe, the ALJ proceeded to step three of the sequential evaluation process.

Mr. Beasley's third argument is that the ALJ did not accord sufficient weight to the opinion of Dr. Mark Lazarev, Mr. Beasley's gastroenterologist. Because Mr. Beasley's claims were filed before March 27, 2017, the standards for evaluating medical opinion evidence are set forth in 20 C.F.R. §§ 404.1527, 416.927. *See Brown v. Comm'r Soc. Sec. Admin.*, 873 F.3d 251, 255 (4th Cir. 2017). ALJs must "evaluate every medical opinion" presented to them, "regardless of its source." *Id.* With regard to the medical opinions of treating physicians, the regulations provide:

> If we find that a treating source's medical opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, we will give it controlling weight.

20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). If a treating source's medical opinion is not assigned controlling weight, an ALJ must consider several factors in determining the weight to give the opinion: (1) the length of the treatment relationship, including its nature and extent; (2) the supportability of the opinion; (3) the opinion's consistency with the record as a whole; (4) whether the source is a specialist; and (5) any other factors that tend to support or contradict the opinion. *Id.* §§ 404.1527(c), 416.927(c).

Mr. Beasley contends that the ALJ erred in "failing to accord adequate weight to the well supported opinion of the [Mr. Beasley's] treating gastroenterologist." (ECF No. 14-1 at 12.) He relies on a completed gastrointestinal RFC questionnaire dated November 17, 2015, (Tr. 573-78), which indicated that Mr. Beasley's "Crohn's disease was a chronic condition that resulted in a number of limitations." (ECF No. 14-1 at 11.) The argument follows that remand is necessary in order for the ALJ to "properly evaluate the opinion of Dr. Lazarev on the clear objective and subjective evidence in the record." (*Id.* at 13.) Mr. Beasley references Dr. Lazarev's responses that Mr. Beasley will "constantly" experience pain or other symptoms severe enough to interfere with attention and concentration; can tolerate "moderate stress"; can walk one city block; can continuously sit and stand at one time for 30 minutes each; can sit and stand/walk for two hours in an 8 hour working day; needs a job that permits ready access to a restroom; will sometimes need to take unscheduled restroom breaks during an 8 hour working day "presently every 30 minutes", may sometimes need to lie down during an 8 hour working day; cannot lift and carry 10 pounds in a competitive work situation; will have "good days" and "bad days"; will likely be absent more than four times a month from work as a result of the impairment; and finally, that

"Crohn's is a chronic lifetime diseases. The goal is to have the patient in remission with meds and sometimes surgery." (Tr. 574-78.) The Acting Commissioner argues that there is substantial evidence supporting the ALJ's findings and that "the limitations opined by Dr. Lazarev are not supported by the record and were properly given little weight." (ECF No. 15-1 at 12.)

An ALJ is permitted to give little weight to the opinion of a treating physician if there is persuasive contrary evidence, *see Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992), but the ALJ must discuss any contrary evidence with specificity so that a reviewing court can conduct a meaningful review. *Monroe*, 826 F.3d at 191. Here, the ALJ did just that. The ALJ concluded that Dr. Lazarev's opinions of "severe impairments [were] unsupported by the objective evidence in the record" and, as such, were entitled to little weight. (Tr. 22.) The ALJ reviewed and summarized the medical records and examining sources related to Mr. Beasley's Crohn's disease. (Tr. 20-22.) The ALJ found that Mr. Beasley's "Crohn's disease is generally well-controlled when [Mr. Beasley] is consistent and compliant with medication and other medical treatment." (Tr. 22.) Where, as here, there is "persuasive contrary evidence," the ALJ has the discretion to afford less weight to the opinion of a treating physician. *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001). Therefore, the ALJ properly afforded less weight to some of Dr. Lazarev's opinions. The Court finds that there is substantial evidence to support the weight afforded by the ALJ to Dr. Lazarev's opinion. For this reason, Mr. Beasley's argument is without merit.

For the reasons set forth herein, Mr. Beasley's Motion for Summary Judgment (ECF No. 14) will be **DENIED**, and the Acting Commissioner's Motion for Summary Judgment (ECF No. 15) will be **GRANTED**. The Clerk is directed to **CLOSE** this case. Despite the informal nature of this letter, it should be flagged as an opinion. An implementing Order follows.

                                                   Sincerely yours,

                                                   /s/
                                               Timothy J. Sullivan
                                               United States Magistrate Judge